## Case No. 17,933.

### WONSON v. GILMAN et al.

[2 Ban. & A. 590; [1] 11 O. G. 1011.]

Circuit Court, D. Massachusetts. April 13, 1877.

INFRINGEMENT OF PATENT — PAINT FOR SHIPS' BOTTOMS.

A patent for paint for preventing the fouling of ships' bottoms, and composed of (1) a suitable medium, (2) the oxide of copper yielding a poisonous solution in water, and (3) mineral matters separating the particles of the oxide, and retarding such solution, is not infringed by a paint containing a similar medium and similar mineral matters for retarding solution, but, in place of the oxide, containing arsenite of copper.

[This was a bill in equity by Augustus H. Wonson against Sumner Gilman and others, for the infringement of letters patent No. 40,515, granted to Tarr & Wonson, November 3, 1863, reissue No. 4,598, granted October 17, 1871.]

Browne & Holmes, for complainant.

A. A. Ranney, for defendants.

SHEPLEY, Circuit Judge. The patent in this case, so far at least as division B is concerned, was sustained by the court in the case

[1] [Reported by Hubert A. Banning, Esq., and Henry Arden, Esq., and here reprinted by permission.]

of Tarr v. Folsom [Case No. 13,756]. It was there decided to be for an improved paint to prevent the fouling of ships' bottoms by the adhesion of barnacles, sea-weeds and other substances, a paint which can be applied with a brush like ordinary paint, and which is compounded of, first, a suitable vehicle or medium; second, the oxide of copper, yielding a poisonous solution in water; and, third, such earthy and mineral matters as separate the particles of the oxide and retard such solution. That case did not necessarily involve, nor does the present case, any decision as to division A, for, if the defendants infringe in this case, the infringement is of division B, as defendants use the suitable vehicle, and also earthy and mineral matters which retard the solution of the poisonous ingredient, and if that poisonous ingredient be an oxide of copper, then they use all the elements of the combination in division B.

The real question presented in this case is one of infringement only, and the solution of that question is dependent upon the other question, whether the poisonous substance which is used as an ingredient in the defendants' paint can, within the limitations of complainant's patent, and within the terms also of the contracts between the parties, be properly classed as an oxide of copper, or as such an equivalent of the oxide of copper as is not disclaimed in the patent, or licensed to be used by the contract between the parties.

Certain agreements between the parties, which are in evidence, contain stipulations that the defendants shall not be prevented thereby from "the making, compounding, using or vending of any paint wherein metal, copper, or the sulphurets, sulphates or sulphides of copper are ingredients, whether with or without a suitable basis, and whether used alone or with any other preservative ingredients except only the oxide of copper."

By the terms of the patent, and according to the principles upon which the complainant's patent, in view of the state of the art, was sustained in Tarr v. Folsom [supra], the patent is limited to the use of oxide of copper, and does not embrace, as equivalents for the oxide, any of the salts of copper, however poisonous. The defendants use, as the poisonous ingredient, in their paint, the arsenite of copper, prepared by precipitating the copper from a solution of the sulphate, chloride or nitrate of copper with arsenite of soda.

Inasmuch as the salt of copper used by defendants, which was generally the sulphate of copper, was a substance composed, according to the old nomenclature in chemistry, of oxide of copper on the one side and sulphuric acid on the other, or, according to the new nomenclature, as sulphuric acid in which two atoms of hydrogen have been replaced by copper, the salt being expressed as one whole, consisting of copper, oxygen and sulphur, it necessarily results that oxide of copper, according to the old notation, or oxygen and copper, according to the new, can

be found by analysis of the sulphate of copper, so in like manner these same elements can, by analysis, be found in the basic arsenite of copper prepared by precipitating the copper from a solution of the sulphate of copper with arsenite of soda.

Accordingly, we observe that several chemists of distinction, examined as experts in the case, find, by analysis of the defendants' paint, oxide of copper; but they admit that the arsenious acid and the oxide of copper were chemically combined. If sulphate of copper were used in the defendants' paint, and such use of sulphate of copper is admissible without infringement, under the license given both by the disclaimer in the patent and the stipulation in the agreements, an analysis of the paint would show the oxide of copper. So, after the conversion of the sulphate of copper into arsenite of copper, by the use of arsenite of soda, an analysis of the paint into which the arsenite of copper enters as an ingredient, will show the presence of copper and oxygen. But these elements, in their new chemical combinations in the new substance, a basic or tribasic arsenite of copper, cannot strictly be said to exist as an oxide of copper, with any more propriety than metallic copper, or arsenic, can be said to exist, as such, in the sulphate of copper or the arsenite of soda. Nor was arsenite of copper a known equivalent for the oxide of copper as a poisonous ingredient in a marine paint, at the date of complainant's patent.

Without undertaking to decide upon the different theories, respecting chemical combinations, maintained by the eminent chemists who have been examined by the respective parties, after a careful examination of all their testimony, I am satisfied that this case must be decided on the practical views above expressed. The conclusion is, that the paint of the defendants, manufactured in the manner testified to by Professor Ordway, is not an infringement of the complainant's patent. Bill dismissed.

[For other cases involving this patent, see note to Tarr v. Webb, Case No. 13,757.]